20-1359-cv(L)
*Portus Singapore PTE Ltd. v. Kenyon & Kenyon LLP*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of February, two thousand twenty-one.

PRESENT:       DENNIS JACOBS,
               RICHARD J. SULLIVAN,
               JOSEPH F. BIANCO,
                     *Circuit Judges.*

---

PORTUS SINGAPORE PTE LTD.,

    *Plaintiff-Appellant-Cross-Appellee*,

        v.                                              Nos. 20-1359, 20-1467

KENYON AND KENYON LLP,

    *Defendant-Appellee-Cross-Appellant*.*

---

---

* The Clerk of Court is respectfully directed to amend the case caption as set forth above.

**For Plaintiff-Appellant-Cross-Appellee:**   Brian J. Isaac, Michael H. Zhu, Pollack, Pollack Isaac & DeCicco, LLP; Mark J. Bern, Mark J. Bern & Partners LLP; James Bonebrake, Patterson Law Firm, LLC, New York, NY.

**For Defendant-Appellee-Cross-Appellant:**   Dennis R. McCoy, Barclay Damon, LLP, Buffalo, NY.

Appeal from the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Plaintiff-Appellant-Cross-Appellee Portus Singapore PTE Ltd. ("Portus") appeals from a decision of the district court granting summary judgment in favor of Defendant-Appellee-Cross-Appellant Kenyon and Kenyon LLP ("Kenyon") with respect to Portus's legal malpractice claim. That claim was premised on Kenyon's failure to file Portus's U.S. patent (the "'526 Patent") in such a manner that it would have granted Portus an additional three-and-a-half years of U.S. patent term. We assume the parties' familiarity with the underlying facts, procedural history of the case, and relevant issues on appeal.

We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to and drawing all reasonable inferences

2

in favor of the non-moving party. *See Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 117 (2d Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Portus and Kenyon do not dispute that New York substantive law applies to this diversity action based on attorney malpractice. *See Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir. 1999). "To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis omitted).

The district court properly granted summary judgment in favor of Kenyon because no reasonable jury could conclude that Kenyon behaved negligently. In essence, Portus argues that Kenyon was negligent when it filed the '526 Patent as a national stage application under 35 U.S.C. § 371 without advising Portus of the option to file the '526 Patent as a bypass continuation application under 35 U.S.C. § 111.

Portus's malpractice theory ignores the context surrounding Portus's engagement of Kenyon and incorrectly holds Kenyon "to the rule of infallibility,"

3

rather than "the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." *Bernstein v. Oppenheim & Co., P.C.*, 554 N.Y.S.2d 487, 489 (1st Dep't 1990). Portus contacted Kenyon for the very first time on June 15, 2001, just two days before the expiration of Portus's window to file a U.S. patent application based on its international application under the Patent Cooperation Treaty. Portus's sole communication with Kenyon was a 43-page fax sent by Portus's Australian patent counsel, which was labeled "URGENT" and instructed Kenyon to "proceed to enter the National Phase in the United States on behalf of our client" by "17 June 2001."[1]  J. App'x 556–57.

Given this extraordinarily short timeframe and urgent subject matter, no reasonable juror could conclude that Kenyon acted unreasonably by following Portus's directions and filing a national stage application, rather than engaging in a time-consuming, costly, and unauthorized expenditure of resources to advise Portus about alternative methods of filing. Kenyon had no reason to suspect that Portus intended for Kenyon to do more than what it did. As far as Kenyon knew,

---

[1] While 35 U.S.C. § 371 describes applications filed under that section as "national stage" applications, not "National *Phase*" applications, Portus acknowledged before the district court that "the direction to enter the 'national phase' was most reasonably interpreted as a direction to file an application under 35 U.S.C. § 371." *Portus Singapore PTE Ltd. v. Kenyon & Kenyon LLP*, 449 F. Supp. 3d 402, 413 n.7 (S.D.N.Y. 2020).

4

it was being retained because (1) Portus had an international application under the Patent Cooperation Treaty, (2) Portus needed a U.S. patent based on that international application, and (3) time was of the essence. The district court therefore correctly concluded that, given the narrow and specific scope of Kenyon's engagement, it was not unreasonable for it to file the '526 Patent as instructed. *See, e.g.*, *Attallah v. Milbank, Tweed, Hadley & McCloy, LLP*, 93 N.Y.S.3d 353, 356 (2d Dep't 2019) (affirming dismissal of a malpractice claim against a law firm that failed to "advise the plaintiff on the efficacy" of a potential lawsuit that fell outside the scope of the representation).

This conclusion was confirmed by Kenyon's liability expert, Robert Stoll, who testified that, even after the passage of the American Inventors Protection Act, it was still the ordinary practice of U.S. patent lawyers to file national stage applications, rather than bypass continuation applications, when applying for U.S. patents based on international patent applications.[2] As Stoll pointed out in his report, this was due in part to the administrative filing advantages associated with

---

[2] Portus challenges Stoll's testimony to the extent Stoll relies on records he recently obtained from the U.S. Patent and Trademark Office ("USPTO"). Assuming, without deciding, its challenge is sound, we consider Stoll's testimony only insofar as it is also based on his experience as a representative of the USPTO.

national stage applications, such as reduced filing fees and a streamlined application process. Accordingly, Kenyon simply followed "one among several reasonable courses of action" for filing the '526 Patent, which does not constitute attorney malpractice. *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985).

Although Portus's liability expert, Clare Cox, took issue with Stoll's expert testimony,[3] her conclusion that Kenyon should have filed the '529 Patent as a bypass continuation was largely premised on information and documents that post-dated 2001 – including the decision of the U.S. Patent and Trademark Office ("USPTO") denying Kenyon's petition to convert the '526 Patent application, which explained how the '526 Patent could have been filed as a bypass continuation application in the first instance. As the district court properly recognized, "[t]he perfect vision and wisdom of hindsight is an unreliable test for determining the past existence of legal malpractice." *Darby & Darby, P.C. v. VSI Int'l, Inc.*, 95 N.Y.2d 308, 315 (2000) (internal quotation marks omitted). Just because Kenyon might have done things differently now with the benefit of hindsight – knowing, in particular, that the USPTO would experience significant

---

[3] Kenyon cross-appeals the district court's decision to admit Cox's testimony, but we assume without deciding that the district court properly admitted Cox's testimony because, even with her testimony in the record, Portus has failed to establish Kenyon's negligence.

delays in processing the '526 Patent – that does not mean that its conduct in 2001 was unreasonable.   To the contrary, given the specific instructions from Portus's Australian patent counsel, the short timeframe in which Portus's U.S. patent application had to be filed, and Stoll's testimony that U.S. patent attorneys ordinarily filed such applications under § 371 in 2001, no reasonable jury could conclude that Kenyon "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession[,] . . . [as] measured at the time of the representation."   *Id.* at 313 (internal quotation marks omitted).[4]

\* \* \*

We have considered Portus's remaining arguments and find them to be meritless.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Because we affirm the district court's grant of summary judgment even after resolving all evidentiary challenges in Portus's favor, we need not decide whether the district court properly admitted the USPTO statistics and excluded the testimony of Portus's damages expert, Justin Lewis.

7