OPINION OF THE COURT
Anthony L. Parga, J.
Motion by the defendant for an order granting summary judgment dismissing the complaint is granted to the extent indicated below, and the case is remanded to the District Court pursuant to CPLR 325 (d).
This is an action to recover damages for defendant’s alleged legal malpractice and for his purported deceitful conduct in violation of Judiciary Law § 487. It appears that the facts of this case, although not unique, have apparently never been officially reported before in a legal malpractice case in New York. This is not the usual situation where the former matrimonial litigant complains about the awards and findings made in the case. Instead, the crux of the allegations here is that the defendant attorney should be held liable for the nearly two years it took to obtain an uncontested judgment of divorce, especially since he purportedly promised it would only take 30 days to achieve this result.
The plaintiff claims in her verified complaint and bill of particulars that the defendant represented (pursuant to an oral retainer) both herself and her former husband, Armando J. Almodovar, in an uncontested divorce proceeding for $1,500, and stated to her on December 20, 1996, that “within 30 days you will be a divorced woman.” The plaintiff contends that she believed she was divorced at the end of January 1997, and “began dating eligible bachelors, and engaged in activities, including sexual relations, as part of her dating experience.” As a result, the plaintiff further contends, she became engaged to be married on August 2, 1998, and made nonrefundable deposits for the goods and services to be furnished for the event. However, in July 1998, she was informed by the defendant that she was not divorced from Mr. Almodovar, and consequently cancelled her wedding plans. The plaintiff admit *379 ted at her examination before trial on September 29, 1999, that she continued to live with her “fiancé” and that she did not have any formal plans to marry him. The plaintiff also admitted during her deposition that she never contacted the defendant about the status of her case.
The defendant claims that he represented Mr. Almodovar and denies that he had an attorney-client relationship with the plaintiff, as recited in the judgment of divorce dated September 25, 1998. The defendant admits that on December 26, 1996, six days after his purported meeting with the plaintiff, he prepared and served a summons and complaint on the grounds of constructive abandonment. He further admits that on April 21, 1997, he purchased a note of issue, sent a copy to the plaintiff, and submitted a judgment of divorce to a matrimonial clerk in Supreme Court, New York County, to be placed on the uncontested calendar based on the plaintiffs default in failing to answer. The defendant concedes that it was not until one year later, in June 1998, that he spoke with the court clerk and was informed that the matter was marked off the uncontested calendar in November 1997, due to a defect in Mr. Almodovar’s affidavit which pertained to the residency of the parties. After contacting the plaintiff in July 1998, the defendant made a motion to restore the case to the uncontested calendar, which was submitted on August 24, 1998. A judgment of divorce was apparently signed on September 25, 1998, by the Honorable Ronald A. Zweibel, even though the original papers were misplaced by the court for a few months.
There is a line of cases in the Second Department which holds that an action for legal malpractice requires proof of three essential elements: (1) the negligence of the attorney, i.e., that the attorney failed to exercise that degree of care, skill and diligence commonly possessed and exercised by members of the legal community (2) the attorney’s negligence was a proximate cause of the loss sustained by the client, and (3) the client incurred actual damages as a direct result of the attorney’s actions (Attonito v La Mirage of Southampton, 276 AD2d 454; Rau v Borenkoff, 262 AD2d 388, 389; Zeitlin v Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, 209 AD2d 510; Won Teh Hwang v Bierman, 206 AD2d 360; Luniewski v Zeitlin, 188 AD2d 642; Mendoza v Schlossman, 87 AD2d 606). Another line of cases in the Second Department adds a fourth element to be proven by the plaintiff: that the plaintiff would have been successful in the underlying action had the attorney exercised due care *380 (Ippolito v McCormack, Damiani, Lowe & Mellon, 265 AD2d 303; Iannarone v Gramer, 256 AD2d 443, 444; Andrews Beverage Distrib. v Stern, 215 AD2d 706; Logalbo v Plishkin, Rubano & Baum, 163 AD2d 511, 513). This element, commonly termed the “but for” test, has been traditionally applied when evaluating legal malpractice claims (Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 42; Carmel v Lunney, 70 NY2d 169, 173; Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine, 45 NY2d 730, 732; Note, The Standard of Proof of Causation in Legal Malpractice Cases, 63 Cornell L Rev 666 [1978]). Thus, in order for a plaintiff to establish the elements of proximate cause and damages, the plaintiff must show that “but for” the attorney’s negligence, he or she would have prevailed on the underlying claim (Rau v Borenkoff, supra; see, Suydam v O’Neill, 276 AD2d 549; Shopsin v Siben & Siben, 268 AD2d 578; McCoy v Tepper, 261 AD2d 592; Ostriker v Taylor, Atkins, & Ostrow, 258 AD2d 572; Lefkowitz v Lurie, 253 AD2d 855; Raphael v Clune, White & Nelson, 201 AD2d 549).
“On a motion for summary judgment to dismiss the action [to recover damages for legal malpractice], a defendant must proffer admissible evidence establishing that the plaintiff is unable to prove at least one of the essential elements of his or her case” (Suydam v O’Neill, supra, at 550; Shopsin v Siben & Siben, supra). Here, however, the defendant failed to sustain his burden (see, Suydam v O’Neill, supra; Shopsin v Siben & Siben, supra; McCoy v Tepper, supra).
The defendant, by denying that he represented the plaintiff in the underlying matrimonial action, in effect concedes that this important threshold issue remains an open question to be resolved at trial. If a fact finder determines that these parties had formed an attorney-client relationship, then the purported malpractice by the defendant can be considered (see, Gardner v Jacon, 148 AD2d 794, 795-796; cf., Solondz v Barash, 225 AD2d 996, 998). “[F]ormality is not essential to the formation of an attorney-client relationship; rather, ‘it is necessary to look at the words and actions of the parties to ascertain’ if such a relationship was formed (C.K. Indus. Corp. v C.M. Indus. Corp., 213 AD2d 846, 848)” (McLenithan v McLenithan, 273 AD2d 757, 758-759 [3d Dept 2000]). A mere request doesn’t constitute an agreement (Platt v Portnoy, 220 AD2d 652, 653). Thus, in order “to establish an attorney-client relationship there must be an explicit undertaking to perform a specific task” (Volpe v Canfield, 237 AD2d 282, 283). In view *381 of the several factual discrepancies which exist on this issue (e.g., defendant’s letter to the plaintiff dated July 9, 1998, which stated it was “imperative * * * [to] meet to resolve certain questions with regard to [Almodovar v Almodovar]”; the lack of proof of payment by the plaintiff to retain defendant’s services; the recitation in the judgment of divorce that the defendant represented only Mr. Almodovar; and the plaintiff’s eyewitness’ sworn statement that the defendant stated “he was going to handle everything”), the defendant has not been able to establish as a matter of law that he did not represent the plaintiff in the underlying matrimonial action.
Assuming arguendo that an attorney-client relationship existed between the parties, the defendant failed to establish as a matter of law that he was not negligent in his handling of the Almodovar matrimonial action (Shopsin v Siben & Siben, supra). “An attorney may be liable for his ignorance of the rules of practice, for his failure to comply with conditions precedent to suit, for his neglect to prosecute or defend an action, or for his failure to conduct adequate legal research” (McCoy v Tepper, supra, at 593 [emphasis supplied]). Here there are two time periods for which the defendant has yet to proffer an explanation: (1) for his delay in filing the divorce papers (between December 27, 1996 and April 21, 1997), and (2) for his failure to follow up on the progress of the case with the court clerk (Apr. 22, 1997-June 1998). Consequently, it is conceivable that a trier of facts may find that the defendant’s conduct fell below reasonable, acceptable standards and was negligent (Bonilla v Abbott, 113 AD2d 861; see, Lauro v Cronin, 184 AD2d 837, 838; Gazzola Bldg. Corp. v Shapiro, 181 AD2d 718).
As for the elements of proximate cause and damages, the circumstances present here — i.e., that the plaintiff, pursuant to defendant’s instructions, intentionally defaulted in the underlying matrimonial action in order to facilitate the process of obtaining a judgment of divorce, which was eventually signed and entered — do not preclude the plaintiff from recovering damages for defendant’s alleged negligence (VDR Realty Corp. v Mintz, 167 AD2d 986; see, Rau v Borenkoff, supra, at 389). The defendant has not established as a matter of law that “but for” his purported negligence, in failing to insure the conclusion of the Almodovar matrimonial action within a reasonable time, the plaintiff would not have sustained the alleged loss of her deposits with the wedding caterer ($1,663), the florist ($300), and the entire amount paid to the stationer for invitations and glass candle holders ($916.19).
*382 The plaintiff’s demand in her first cause of action for legal malpractice, to recover damages for suffering “emotional distress and mental anguish * * * shame and embarrassment * * * as well as religious turmoil,” is dismissed (Dirito v Stanley, 203 AD2d 903, 904). “A cause of action for legal malpractice does not afford recovery for any item of damages other than pecuniary loss so there can be no recovery for emotional or psychological injury” (Wolkstein v Morgenstern, 275 AD2d 635, 637; Luckhardt v Jeffrey W. Waller, P. C., 245 AD2d 491, 492). Even if the plaintiff asserted a cause of action for negligent infliction of emotional distress, it could not be found viable since the defendant’s conduct was not “ ‘ “so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community” ’ [citations omitted]” (Wolkstein v Morgenstern, supra, at 636-637; Green v Leibowitz, 118 AD2d 756, 757).
The plaintiff’s second cause of action, which seeks treble damages for defendant’s alleged violation of Judiciary Law § 487, is dismissed. Judiciary Law § 487 provides, in relevant part, that an attorney who is
“guilty of any deceit or collusion * * * with intent to deceive * * * any party •
“forfeits to the party injured treble damages, to be recovered in a civil action” (emphasis supplied; see, Schindler v Issler & Schrage, 262 AD2d 226, 228).
“Because of the role attorneys play in the vindication of individual rights in our society, they are held to the highest standard of ethical behavior” (Campagnola v Mulholland, Minion & Roe, 76 NY2d, supra, at 43). Although it can be argued that the defendant herein breached ethical rules established by the Code of Professional Responsibility (see, Code of Professional Responsibility DR 6-101 [a] [3] [22 NYCRR 1200.30 (a) (3)]; Matter of Ackerman, 231 AD2d 192; see also, Matter of Lieberman, 244 AD2d 73; Matter of Danas, 236 AD2d 44; Matter of Hoppmann, 230 AD2d 213), the plaintiff did not set forth sufficient allegations of deceit to state a cause of action to recover damages (Estate of Steinberg v Harmon, 259 AD2d 318; Mecca v Shang, 258 AD2d 569, 571). Her complaint merely states “[t]hat the defendant deceived [her] into believing [she] was divorced when in fact defendant knew that [she] was not divorced and would not be divorced.” This allegation of deceit, even if viewed in the light most favorable to the plaintiff, fails to establish as a matter of law any intentional behavior on the *383 part of the defendant, and that the defendant engaged in “ ‘a “chronic, extreme pattern of legal delinquency” ’ ” (Donaldson v Bottar, 275 AD2d 897, 898). Moreover, the plaintiff failed to meet her burden of raising a triable issue of fact on this cause of action, especially in view of her admission during her examination before trial that she never made an inquiry to the defendant as to the status of her matrimonial action (see, Gonzalez v Gordon, 233 AD2d 191).
Accordingly, based upon the foregoing, the defendant’s motion for summary judgment is granted to the extent that (1) plaintiffs first cause of action to recover damages for legal malpractice is limited to the alleged actual pecuniary loss sustained by the plaintiff ($2,879.19), and (2) the plaintiff’s second cause of action to recover damages for defendant’s alleged breach of Judiciary Law § 487 is dismissed as a matter of law. This court transfers this case to the District Court pursuant to CPLR 325 (d) for a plenary trial on the issues specified above since the amount of damages which could be awarded does not exceed the jurisdictional amount of the District Court. A copy of this order shall be served on the Calendar Clerk and the Clerk of the District Court.